**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BRADLEY C. STARK,** | § | |
| **Petitioner,** | § | |
| | § | **3:16-CV-298-M** |
| **v.** | § | **3:08-CR-258-M** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

## I.  Procedural Background

Petitioner filed this petition to vacate, set-aside, or correct sentence pursuant to 28 U.S.C. § 2255. He challenges his conviction for seven counts of wire fraud and one count of securities fraud. The district court sentenced him to 276 months in prison. On September 24, 2014, the Fifth Circuit affirmed and denied Petitioner's motion for rehearing. *United States v. Stark*, 582 Fed. Appx. 462 (5th Cir. 2014).

On January 20, 2016, Petitioner filed the instant § 2255 petition. He argues:

1.      He received ineffective assistance of appellate counsel;

2.      The trial court erred when it admitted certain recorded phone calls into evidence;

3.      The trial court erred when it failed to dismiss the wire-fraud convictions under the

Double Jeopardy Clause;

4.      The trial court erred in denying Petitioner's motion for acquittal;

5.      The trial court committed sentencing errors;

6.      The trial court's errors forced Petitioner to take the stand in his own defense;

7.      The judgment and restitution order contains clerical errors and constitutes an unlawful delegation of Article III powers.[1]

On April 11, 2016, Respondent filed its answer.  On May 12, , 2016, Petitioner filed a reply.  The Court now finds the petition should be denied.

## II.  Factual Background

The following factual background is taken from the PSR.

In June 2000, Petitioner incorporated Sardaukar Holdings ("Sardaukar") as an International Business Corporation in the British Virgin Islands.  Petitioner created Sardaukar to invest and manage financial assets of clients.  Between October 14, 2004, and July 3, 2005, Petitioner operated Sardaukar out of his residence in Riverside, California.  Petitioner was the sole active officer of the company and directed all affairs of the company.

Between March 2004 and July 2005, Petitioner and others began soliciting investors to invest in Sardaukar.  While soliciting potential investors, Petitioner created brochures and pamphlets which contained materially false and fraudulent information to entice potential investors to send money to Sardaukar for investment.  Besides mailing out brochures and pamphlets, Petitioner also solicited investors in person, on the telephone, and held investment seminars in hotels.

---

[1]Petitioner's claim that the judgment contains a clerical error will be addressed by separate order by the district court.

In March 2004, during one of Petitioner's hotel seminars, he met unindicted coconspirator James Rumpf.  While speaking with Rumpf, Petitioner learned that Rumpf intended to solicit others to invest in Sardaukar using the representations Petitioner had made to him.  Based on Petitioner's misrepresentations, Rumpf agreed to invest funds with him in exchange for monthly fee payments equal to a percentage of invested funds.  Rumpf used an account at RBTT Bank titled Christ is God (CIG) in the Netherland Antilles for the investment program.

On April 14, 2004, indicted coconspirator Stanley Leitner incorporated Megafund Corporation ("Megafund") in the State of Texas.  Leitner was the chief executive officer of Megafund.  In exchange for obtaining investors, Rumpf agreed to pay Leitner a monthly fee equal to a percentage of the invested funds.  Between April 2004 to July 2005, Leitner fraudulently raised investor funds for his Megafund fraudulent investment scam.  Some of Leitner's investor funds were deposited in Megafund's bank in account in Waxahachie, Texas.  At periodic intervals, Leitner transferred some or all of the funds in the Waxahachie account to the CIG account in the RBTT Bank in the Netherland Antilles.

On October 14, 2004, Petitioner opened a JP Morgan Chase Bank account in the name of Sardaukar Holdings, IBC.  This was the main account used by Petitioner to receive investor funds.  Between October 2004 and July 2005, Petitioner and others caused investors to transmit approximately $14,210,047 by wire to the Sardaukar JP Morgan Chase account to buy both an insurance contract to insure their invested principle against any risk of loss and as investments to be used for commodities futures, currency trading, and tri-party repurchase agreements.  Of the investors that paid for the insurance contracts, Petitioner sent these investors copies of fictitious

insurance policies or policy verification documents.  Petitioner also sent these investors a forged letter, purportedly written by a New York attorney, which falsely assured the investors that their investment principal was safe and secure against loss of any kind.

In September 2004, Petitioner opened a legitimate trading account at a brokerage firm called ManPro Financial in Chicago, Illinois.  Petitioner transferred approximately $2,000,000 of investor funds which he received by fraudulent means into this account.  Petitioner legitimately traded these funds and generated over $80,000 in profit.  ManPro Financial sent Petitioner monthly account statements.  Petitioner used these legitimate account statements to create bogus monthly account statements which he sent to investors.

Except for the one legitimate investment account, none of the remaining investments were invested or traded as Petitioner had claimed to investors.  Petitioner returned approximately $4,268,753 to investors in the form of ponzi payments.  The remaining investment funds were used by Petitioner to finance his lavish lifestyle.

On June 28, 2005, the Commodity Futures Trading Commission (CFTC) began investigating complaints from several Sardaukar investors.  In July, 2005, the SEC brought an action against Petitioner alleging he was running Sardaukar as a fraudulent ponzi scheme.  A Receiver was appointed to assume control over the assets and operations of Sardaukar. Petitioner provided false information to the Receiver and to investors which hindered the Receiver's ability to secure the assets of Sardaukar and return them to investors.

On August 20, 2008, Petitioner was indicted on seven counts of wire fraud under 18 U.S.C. § 1343, one count of securities fraud under 15 U.S.C. §§ 77q(a) and 77x, and two money-laundering counts that were later dismissed by the government.  Petitioner pled guilty to count

one of the indictment, but later moved to withdraw the guilty plea, which the court granted.

Petitioner elected to represent himself at trial. The court also appointed stand-by counsel. After a jury trial, the jury found Petitioner guilty on all charges. On October 9, 2012, the court varied downward and sentenced Petitioner to concurrent 240-month terms on the wire fraud counts and a consecutive 36-month term on the securities fraud count.

## III. Discussion

### 1.   Ineffective Assistance of Counsel

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

Petitioner claims he received ineffective assistance of appellate counsel when counsel

failed to communicate with him and failed to argue claims on appeal including (1) violations of the Double Jeopardy Clause; (2) the use of illegal tape recordings and "any evidence derived therefrom"; (3) violation of the Speedy Trial Act; (4) insufficiency of the evidence; (5) subornation of perjury and actual perjury; (6) obstruction of evidence and materials necessary to prepare and present a defense; and (7) multiple cumulative sentencing errors.

Petitioner claims that his convictions for both wire fraud and securities violated the Double Jeopardy Clause because the elements of wire fraud are "subsumed entirely" in the elements of securities fraud.  An indictment charging several offenses for the same acts is not multiplicitous, however, where the conviction under each statute requires "proof of an additional fact which the other does not."  *See United States v. Tucker*, 345 F.3d 320, 337 (5th Cir. 2003) (finding prosecution for mail fraud and securities fraud based on same conduct was not multiplicitous) (citing *United States v. Bruce*, 488 F.2d 1224, 1230 (5th Cir. 1973).  In this case, the securities fraud count required proof of the offer or sale of a security, while the wire fraud counts did not.

Petitioner attempts to support his double jeopardy claim by stating that the Supreme Court recently docketed a case raising similar double jeopardy issues.  In *United States v. Nicholson*, 638 Fed. Appx. 40, 42 (2d Cir. 2016), the Second Circuit determined that the defendant's convictions for mail fraud and securities fraud were not multiplicitous because mail fraud required proof of use of the mails while securities fraud did not.  On May 16, 2016, the Supreme Court denied certiorari.  *Nicholson v. United States*, 136 S.Ct. 2032 (2016).  This case therefore fails to support Petitioner's double jeopardy claims.

Petitioner also claims his right to a speedy trial was violated.  The Speedy Trial Act

requires a criminal defendant's trial to begin within seventy days of his indictment or initial

appearance. 18 U.S.C. § 3161(c)(1). The Act, however, excludes many delays from this time

period, including delays for continuances and delays resulting from other proceedings regarding

the defendant. (*Id*.)

The record shows Petitioner's counsel filed a motion for continuance, (ECF No. 15), the

parties filed a joint motion for continuance (ECF No. 22), and Petitioner filed two *pro se*

motions for continuance (ECF Nos. 71, 76). The court also continued the trial date to hold a

competency hearing, and granted continuances in the interest of justice. (ECF Nos. 30, 117, 125.)

Petitioner has failed to show a violation of the Speedy Trial Act.

Petitioner claims the government obstructed evidence and materials necessary for his

defense. Petitioner, however, has not specified what evidence was obstructed, how the

government obstructed the evidence, and how this evidence would have likely changed the

outcome of the trial. Petitioner's conclusory claim should be denied. *See Ross v. Estelle*, 694

F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise

constitutional issues in habeas proceedings).

Petitioner claims appellate counsel failed to challenge the admissibility of phone

recordings between James Rumpf and Petitioner that Rumpf recorded without his permission.

Petitioner states he was in California at the time of the recordings and that California state law

prohibited the secret recording of his phone calls.

The federal wiretap statute, 18 U.S.C. §§ 2510, *et seq*., prohibits the interception and

disclosure of wire, oral, or electronic communications except those specifically provided for in

the statute. *Id*. at § 2511(1). One exception is the one-party consent rule that allows a person

Page 7

who is not acting under color of law to intercept a wire or oral communication if that person is a party to the communication. *Id*. at 18 U.S.C. § 2511(2)(d). The one-party consent rule does not apply, however, if the person recorded the call "for the purpose of committing any criminal or tortious act." *Id*.; *see also United States v. McTiernan*, 695 F.3d 882, 887 (9th Cir. 2012).

Petitioner argues Rumpf made the recording in violation of state law, therefore the one-party consent rule does not apply. The prohibition against recording the call for the purpose of committing any criminal or tortious act, however, is construed narrowly. *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013). "It is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party." *Id*. The Court looks at why the calls were recorded, rather than why the calls were made. *Id*. at 152.

In this case, Petitioner has failed to show Rumpf made the recording for the purpose violating the state law against recordings, or to threaten, blackmail or embarrass Petitioner. *See McTiernan*, 695 F.3d at 889 ("Congress intended to permit one party to record a conversation when the recorder is 'acting out of a legitimate desire to protect himself.'") (quoting *Moore v. Telfon Comme'ns Corp.*, 589 F.2d 959, 966 (9th Cir. 1978)). Petitioner's claim should be denied.

Petitioner claims appellate counsel should have challenged the sufficiency of the evidence, the alleged subornation of perjury and actual perjury of the Receiver, and the six-level enhancement for more than 250 victims. The record shows appellate counsel did raise these claims on direct appeal. The Fifth Circuit considered the claims and affirmed the conviction. Petitioner has failed to establish ineffective assistance of counsel.

Petitioner also argues his counsel should have argued that (1) the 20-level enhancement

for the intended loss of $13.8 million should have been six levels because the loss was approximately $30,000; (2) the enhancement for being a securities broker or dealer should not have been applied; and (3) the advisory range should have been 37 months to 46 months or 46 months to 57 months, not 360 months to life.

Petitioner claims the intended loss amount should be calculated by including the amount of money returned to investors. While the amount forfeited can reduce Petitioner's amount of restitution, it will not reduce his guideline level. Under § 2B1.1, the loss amount is the greater of the actual loss, or the intended loss. USSG § 2B1.1 cmt. n.3. The loss amount is offset by the amount a defendant returns to the victim before the offense was detected. *Id.* As stated in *United States v. Dowl*, 619 F.3d 494 (5th Cir. 2010):

> The Guidelines use loss as a proxy for the seriousness of the fraud. An offense is generally less serious if the defendant "transfers something of value to the victim(s)." But that "something of value" must be transferred before the fraud is detected. Otherwise, as the Sentencing Commission noted, "it would be inappropriate to credit the defendant" with the value of the transferred assets.

*Id.* at 503. In this case, Petitioner has failed to show he returned any assets to the victims prior to detection of the offense. Petitioner's claims regarding the loss amount and guideline range are without merit.

Petitioner states he was not required to be a registered broker, therefore he should not have received a four-level increase. Petitioner, however, was soliciting investors to invest money in equities, commodities futures, currency trading, and tri-party repurchase agreements. He was therefore required to register as a broker under 15 U.S.C. § 78o. Petitioner's claim is without merit. Petitioner has failed to establish he received ineffective assistance of counsel.

2.      **Trial Error**

Petitioner claims the trial court erred when it: (1) allowed the Rumpf recordings into evidence; (2) failed to dismiss the wire fraud convictions under the Double Jeopardy Clause; (3) failed to grant an acquittal; (4) committed various sentencing errors; (5) forced Petitioner to testify.

As discussed above, Petitioner's double jeopardy claims and his claims that the Rumpf recordings were unlawfully admitted are without merit.  These claims should be denied.[2]

Petitioner claims the trial court misapplied the sentencing guidelines.  He alleges: (1) the six-level enhancement for more than 250 victims should have been two levels because 104 victims were incorrectly included; (2) the 20-level enhancement for the intended loss of $13.8 million should have been six levels because the loss was approximately $30,000; (3) the enhancement for being a securities broker or dealer should not have been applied; and (4) the advisory range should have been 37 months to 46 months or 46 months to 57 months, not 360 months to life.  Sentencing error claims, however, are not cognizable under § 2255.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  These claims should be denied.

Petitioner also claims that the wrongful admission of the Rumpf recordings, and the alleged perjury of the Receiver, forced him to take the witness stand in his own defense.  As discussed above, the Rumpf recordings were properly admitted.  The Fifth Circuit also determined that the Receiver's testimony was either not perjured or not material.  *Stark*, 582 Fed.

---

[2]Respondent argues these claims are procedurally barred because Petitioner failed to raise the claims on direct review.  Petitioner, however, argues he did not raise the claims on direct appeal due the ineffective assistance of appellate counsel.  The Court has therefore addressed the claims.

Appx. At 463-64. Petitioner's claims should be denied.

**3.    Restitution**

Petitioner claims the order of restitution is an improper delegation of Article III powers to an Article II agency. A claim challenging restitution, however, is not properly raised under § 2255. *Campbell v. United States*, 330 Fed. Appx. 482, 483 (5th Cir. 2009) (citing *United States v. Hatten*, 167 F.3d 884, 887 n.5 (5th Cir. 1999) and *United States v. Segler*, 37 F.3d 1131, 1135 (5th Cir. 1994)). Petitioner's claim should be denied.

**IV.  Recommendation**

For the foregoing reasons, the Court recommends that petition to vacate, set-aside, or correct sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed this 6th day of March, 2017.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
<u>NOTICE OF RIGHT TO OBJECT</u>**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).